UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PNC BANK, as successor by merger to NATIONAL CITY MORTGAGE COMPANY, a/k/a NATIONAL CITY BANK, <br>     Appellant, <br> vs. <br> JOSEPH M. BLACK, JR., as Chapter 13 Trustee, <br>     Appellee, | 4:10-cv-45-TWP-WGH <br> DISTRICT COURT CAUSE |
| IN RE: HOWARD W. LITTLE and WENDY L. LITTLE, | NA 03-93031-BHL-13 <br> BANKRUPTCY COURT CAUSE |
| JOSEPH M BLACK, JR, as Chapter 13 Trustee, <br>     Plaintiff, <br> vs. <br> NATIONAL CITY MORTGAGE COMPANY, <br>     Defendant. | NA-09-AP-59045 <br> ADVERSARY PROCEEDING |

**ENTRY AFFIRMING BANKRUPTCY COURT'S DECLARATORY JUDGMENT**

This is an appeal from a declaratory judgment entered by the bankruptcy court in an adversary proceeding brought by Chapter 13 Trustee, Joseph M. Black, Jr., and submitted to the bankruptcy court on stipulated facts. The adversary proceeding is related

to the bankruptcy estate of Howard and Wendy Little (hereinafter "Debtors"). For the reasons explicated in this entry, the district court affirms the judgment of the bankruptcy court.

## *UNDISPUTED FACTUAL BACKGROUND*

On August 8, 2003, Debtors filed for Chapter 13 bankruptcy protection. National City Mortgage Company (succeeded by PNC Bank and, consistent with the parties' briefs, hereinafter "PNC "), was listed by Debtors as a secured creditor by virtue of its first mortgage lien on their residence in Salem, Indiana. Joseph M. Black, Jr. was appointed as trustee ("Trustee") and Debtors filed their Chapter 13 Plan (the "Plan") on August 18, 2003, utilizing a form in use at the time for Chapter 13 Plans in the Southern District of Indiana. The Plan provides that PNC's mortgage shall be treated as such that the Trustee shall cure the defaults due and owing. The Plan also provides that post-petition mortgage payments will be made by Debtors through the Trustee. Debtor's Plan does not indicate whether or not Defendant's mortgage will be paid in full.

On September 10, 2003, PNC filed its proof of claim asserting the total amount of its claim as of the date of filing to be $38,414.16, plus interest, fees and costs from February 1, 2003. PNC's Proof of Claim also included pre-petition mortgage arrears as of the date of filing in the amount of $8,775.06. An identical amended proof of claim was filed by PNC on October 6, 2003 and no further amended claims were filed by PNC.

2

An order confirming the Plan was entered by the bankruptcy court on November 18, 2003. It required the Debtor to pay to the Trustee the sum of $1,600 a month for a period of 60 months or until further ordered, of which $655.13 per month would be used to pay the mortgage. Additionally, the mortgage arrearage of approximately $8,000 was to be paid within the plan period.

At no point during the more than five year period during which the Plan was pending did PNC advise the Trustee of a post-petition arrearage for escrow advances on taxes and insurance or file an amended claim reflecting such a post-petition arrearage. Nor did PNC seek relief from the mandatory stay for purposes of pursuing a post-petition arrearage of any sort. While the Plan was pending, PNC did not seek reimbursement as an administrative expense pursuant to 11 U.S.C. § 503 advances it made for post-petition taxes and insurance.

On March 25, 2005, the Trustee filed a Motion for Authority to Increase Debtors' Chapter 13 Plan Payment. The motion sought, without objection, to increase the Debtors' monthly payment to the Trustee to $1,720.47 and the monthly mortgage payment from the Trustee to PNC to $775.06. The motion stated that pursuant to an escrow analysis sent to the Trustee by PNC, "the mortgage payment being paid through the Plan shall increase to $775.60 beginning May 2005, leaving the monthly Chapter 13 Plan payment short in providing for the mortgage."

Through the course of the bankruptcy, the Trustee made post-petition mortgage payments to PNC, totaling $26,639.10 in principal and $4,107.55 in interest at 6.5%. The Trustee also made payments totaling $8,775.06 which were applied to relieve the Debtors' pre-petition arrearage. Neither the Trustee nor the Debtors told PNC that they intended to pay off the mortgage through the bankruptcy.

On September 13, 2007, the Trustee filed a Motion To Deem Mortgage Current and the bankruptcy court granted the motion, entering its Order Determining Real Estate Mortgage To Be Current on October 12, 2007. That order stated in pertinent part:

> 1. Debtor(s)' continuing monthly mortgage payments, the Debtor(s)' pre-petition mortgage arrearage with mortgagee, and any post-petition mortgage arrearage included in the Debtor(s)' plan have been paid by the Trustee through the Chapter 13 Plan in accordance with the proof of claim of the mortgagee as allowed by the Court.
>
> 2. According to the records of the Trustee, all continuing monthly mortgage payments due during the life of the Plan have been paid by Trustee, the pre-petition mortgage arrearage, and any post-petition mortgage arrearage included in the Debtor(s)' Plan have been cured by the Trustee.
>     IT IS FURTHER ORDERED ADJUDGED AND DECREED by the Court that the Debtor(s)' mortgage with mortgagee is determined to be current as of August 2, 2007.
>     IT IS FURTHER ORDERED ADJUDGED AND DECREED that the mortgagee shall, if necessary, amend its records to show the Debtor(s)' mortgage obligation current as of August 2, 2007.

No further payments were made to PNC during the course of the bankruptcy and the Debtors received their discharge on November 13, 2008.

Debtors' mortgage with PNC was an escrowed loan, as provided for in paragraph 2 of the mortgage. During the course of the bankruptcy and up to October 16, 2009, PNC's records indicate it made escrow advances on behalf of Debtors in the amount of $23,232.63 to cover taxes and insurance. Because PNC had not been paid for these escrow advances, it sent a notice of foreclosure to one of the Debtors subsequent to their discharge. The Debtor, in turn, sought the assistance of the Trustee. The Trustee moved to reopen the bankruptcy proceedings and filed a related Complaint For Declaratory Judgment Determining Claim [of PNC] Satisfied. Following the submission of briefs and a joint statement of stipulated facts, the bankruptcy court entered its judgment in favor of the Trustee on April 1, 2010, finding that PNC's injury was "self-inflicted" as a result of its failure to take advantage of numerous opportunities during the course of the bankruptcy to alert the Trustee of its advancement of the escrow amounts and either amend its claim or seek payment of the advancements as administrative fees. The bankruptcy court also found that the Trustee had paid off all pre-petition arrearage by November 2004 and the full principle balance at 6.5% interest in August 2007.

The bankruptcy court reached the following legal conclusion, from which PNC now appeals:

> The Trustee paid [PNC's] claims properly and fully on behalf of the Debtors. [PNC] had a full and fair opportunity to assert their claim during the pendency of the proceedings but neglected to do so. [PNC] lost the right to collect the post-petition escrow advances by not participating in the case.

The Court, having considered the foregoing pleadings and applicable case law, and being otherwise fully and sufficiently advised, now finds for the reasons stated above, that Debtor's debt to [PNC] has been fully satisfied.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that [PNC's] claims against the Debtors have been fully paid, that [PNC's] lien against the Debtor's residence has been satisfied, and that [PNC] shall amend its records to show Debtor's mortgage obligation fully satisfied and record the same with the appropriate county recorder.

### *DISCUSSION*

This court reviews a bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*. *In re Smith*, 582 F.3d 767, 777 (7th Cir. 2009). Upon review the court "may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree, or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

PNC's mortgage lien was listed under Section 2 of the Plan, designated as a section for "Secured Claims." Paragraph A under Section 2 is titled "Curing Defaults and Maintaining Payments on Real Estate" and it is under this paragraph that the Plan lists PNC's mortgage as follows:

| **Creditor** | **Collateral** | **Estimated Arrears** | **Interest Rate** |
|---|---|---|---|
| [PNC] Mortg.<br><br>(Reg. Pmt. $655.13 | Residence | $8,000.00 | None |

PNC argues that the bankruptcy court erred in determining that its mortgage had

6

been satisfied when it had been treated as a "cure and maintain" debt throughout the bankruptcy proceeding.  PNC uses the phrase "cure and maintain" in its argument as though it were a term of art for the bankruptcy treatment of a debt that will necessarily extend past the completion of a bankruptcy plan; however, it is not a phrase which has found its way into any reported bankruptcy case in this circuit and there is no basis to read into the phrase the meaning PNC seems to think it has.  In short, it is unreasonable to read into the title "Curing Defaults and Maintaining Payments on Real Estate," a commitment to continue payments past what may be necessary to satisfy the creditor's proof of claim.

Yet, PNC contends the language of the Plan makes it clear that regular payments were to be made during the course of the Plan and its lien was to survive bankruptcy. How PNC reaches that conclusion escapes this court.  As the Trustee has pointed out, Paragraph A of Section 2 is typically where all mortgages are listed in the form then in use for Chapter 13 Plans and it is not unusual for mortgages to be completely paid off through regular monthly payments at some point during the course of the several years a Chapter 13 Plan may encompass.  While the Plan does not state that the mortgage will be completely paid-off during its pendency, neither does it state or imply that it will not be paid-off.  PNC's contention that the bankruptcy court's order is in conflict with the language of the Plan is without merit.

PNC's Proof of Claim states that the total amount of its claim at the time the

7

bankruptcy was filed was $38,414.16, plus interest, fees and costs from February 1, 2003, of which $8,775.06 was pre-petition arrearage. It mentions nothing regarding the advancement of escrow payments. Nor did PNC ever indicate during the course of the bankruptcy that it was advancing additional monies on behalf of the Debtors, though the opportunity to inform the Trustee was constant and the circumstances should have prompted the same on numerous occasions. If the monthly payment it was receiving did not cover the cost of the insurance and tax payments which PNC was fronting, it would seem reasonable that the bank would inform the Trustee or bankruptcy court of the same and seek either to amend its claim or obtain payment of the escrow advances as administrative post-petition expenses. It did not. In fact PNC did nothing during the fourteen month period the bankruptcy continued after the monthly payments from the Trustee stopped; it did nothing in response to the Trustee's Motion To Deem Mortgage Current; nor did it respond to the bankruptcy court's order granting that motion, which order clearly stated that all monthly mortgage payments due along with both pre-petition and post-petition arrearage had been paid in accordance with the mortgagee's proof of claim.

The Trustee was not required to do more than pay PNC in accordance with the Plan in an amount not to exceed its proof of claim - which he did. If PNC sought more than what it listed on its proof of claim, it had an obligation to so inform during the course of the bankruptcy. If it understood that it was still owed money for post-petition

advances made during the course of the Plan, why did PNC not object to the Debtors' discharge from bankruptcy? The clear conclusion to reach here is that PNC was not paying attention to what was going on in the bankruptcy estate and made assumptions that put its rights at risk.

A similar circumstance of mortgagee neglect existed in *Matter of Chappell,* 984 F.2d 775 (7th Cir 1993). In that case, a mortgagee attempted to foreclose on a debtor's home after the conclusion of the debtor's Chapter 13 proceeding based upon the assertion that it was entitled to interest pursuant to 11 U.S.C. § 506(b). *Id.* at 778. The bankruptcy court held that the creditor lost any right to interest based upon its failure to assert its claim for interest prior to the closing of the bankruptcy proceeding. *Id.* at 782-83. Debtors' confirmed plan provided for a 100% payout to the mortgagee on its second mortgagee, but the plan did not specifically provide for the payment of interest under § 506. On appeal by the mortgagee, the Seventh Circuit declined to allow the mortgagee to proceed with foreclosure, noting specifically that the mortgagee had several opportunities to resolve the § 506 issue during the life of the Chapter 13 plan but failed to avail itself of any of these opportunities. *Id*. Quoting from *Matter of Pence,* 905 F.2d 1107, 1109 (7th Cir. 1990), the court opined that creditors - "especially lending institutions" - are responsible for following and actively participating in the administration of a bankruptcy estate in order to protect their interests. *Id*. at 783.

Like *Chappell*, there is no evidence here of any scheme or attempt to defraud on

9

the part of the Debtor or the Trustee. In *Chappel,* the court referred to the circumstance as an "innocent mistake." *Id*. The same might be said of the circumstances here, though the mistake seems to have clearly been one-sided, because the Trustee made payment in accordance with the Plan and PNC's proof of claim and received confirmation of the same through the bankruptcy court's order deeming the mortgage current.

PNC argues as well that the Debtors have been unjustly enriched by its making the escrow disbursements. The bank cites to no authority for the proposition that a debtor in bankruptcy is unjustly enriched when a creditor either does not pursue or is not paid money which it advanced on behalf of the debtor prior to the debtor's discharge.[1] It should hardly be surprising that as a result of bankruptcy proceedings debtors often end up paying a creditor less than they originally contracted to pay him. Further, the Debtors complied with the Plan and were by no means attempting to hoodwink PNC. As the Trustee noted, had PNC's amended proof of claim set forth the on-going post-petition expenses it was advancing, or had PNC communicated to the Trustee the status of post-

---

[1] This entry addresses and affirms only the bankruptcy court's determination that upon the Debtors' discharge the debt and mortgage obligation owed to PNC had been fully satisfied and that the lien held by PNC against their residence had been satisfied. To the extent PNC made payments on behalf of the Littles after they were discharged from bankruptcy, those payments would no longer be related to a debt or the bankruptcy proceedings and recovery of the same would be outside the purview of this or the bankruptcy court.

petition escrow advances and the allocation of the ongoing mortgage payments between principal and escrow, the mortgage debt would have been paid in full.

## *CONCLUSION*

This is a case where a creditor made assumptions which placed its rights at risk and then neglected to follow or even follow-up during the course of the Chapter 13 Plan which yielded several occasions where a prudent creditor would have realized that its assumptions were wrong. Accordingly, the decision of the bankruptcy court in the adversary proceeding brought by the Trustee, No. 09-AP-59045, is AFFIRMED.

IT IS SO ORDERED. 12/23/2010

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Copies to:
Jennifer D. McNair
MERCER BELANGER
jmcnair@indylegal.com

Richard A. Schwartz
KRUGER SCHWARTZ & MORREAU
rick@ksm-law.com

David C. Ollis
OFFICE OF THE STANDING TRUSTUEE
dollis@trustee13.com

Daniel Steven Tomson
MERCER BELANGER
dtomson@indylegal.com